**Douglas C. Fladseth**   (Bar No. 083420)
**LAW OFFICE OF DOUGLAS C. FLADSETH**
**1160 North Dutton Avenue, Suite 180**
**Santa Rosa, California 95401**
**Telephone: (707) 545-2600**
**Fax: (707) 545-0552**
**fladseth@aol.com**

**Attorneys for Plaintiffs**

UNITED STATE DISTRICT COURT

Northern District of California

| | |
|---|---|
| PATRICIA LOUCKS; DONNA BARRY; LUKE BARRY; CHRISTINA KEENEY-FOSTER; ERIC FOSTER; PETE FIGONE; DAWN LOUCKS; ASHLEY LOUCKS; TONY MARKS; NENA MEOLA-MARKS<br><br>Plaintiffs,<br><br>vs.<br><br>KAISER FOUNDATION HOSPITALS; KAISER FOUNDATION HEALTH PLAN, INC.; THE PERMANENTE MEDICAL GROUP, INC.; AMERICAN MEDICAL RESPONSE; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and DOES 1-50, inclusive,<br><br>Defendants._____/ | Case No.<br><br>**COMPLAINT** |

**STATEMENT OF THE CASE**

1.   This is a case of medical malpractice, dependent adult abuse, negligent infliction of emotional distress , intentional misconduct , EMTALA and wrongful death.

2.   SHAWN LOUCKS was 51 years old when he presented to Kaiser Santa Rosa Emergency Department on the afternoon of February 10, 2019. He was brought in by ambulance. He was diagnosed with a stroke. He was sent home.

3.   On February 20, 2019 Shawn had another stroke. He was again brought by

ambulance to KAISER Santa Rosa Emergency Department. After several hours it was determined that he needed a higher level of care. Attempts were made to obtain a critical care ambulance for transfer to either KAISER Redwood City or to UCSF. There were repeated delays in obtaining the ambulance. Ultimately the transfer was made to UCSF. Despite surgical intervention Shawn did not survive and he died February 23, 2019.

4. KAISER breached the standard of medical care and recklessly discharged Shawn after the first visit. Shawn had an unstable condition that required further hospitalization and close monitoring which in all probability would have prevented his condition from deteriorating and causing to the second and fatal stroke.

5. The second Kaiser visit also involved inappropriate delays in diagnosis and treatment, including but not limited to timely critical care transfer.

6. Multiple close family members were present in the ER during the early morning hours of February 21, 2019 when KAISER failed to obtain a timely critical care transport. KAISER had a pattern and practice of delaying ambulance transfers. KAISER had a pattern and practice of failing and refusing to transport critically ill patients to the most readily available life saving critical care. Instead KAISER avoided transfer to non-KAISER facilities and avoided using non-KAISER ambulances even when it greatly increased the risk to their patients.

7. KAISER chose to place their interest in profits ahead of their patients critical healthcare needs and all in violation of their fiduciary duty and Hippocratic oath to their paid subscribers.

8. When even KAISER personnel also exhibited obvious frustration in their inability to obtain a timely and critical transfer. It became obvious to the present family members that the expected critical care ambulance was being unreasonably delayed despite Shawn being in critical condition and deteriorating rapidly . This caused extreme emotional distress to the present family members. KAISER documents that they had consulted with ambulance provider defendant AMERICAN MEDICAL RESPONSE (AMR) who had promised to send their critical care ambulance but nonetheless and without telling anyone simply determined not to do so and refused to do so.  AMR  negligently and recklessly and intentionally refused to send the critical

1  care ambulance as promised. This caused hours of delay at a most critical time. KAISER
2  personnel then had to frantically search for an alternative critical care ambulance in the early
3  morning hours.  They were reportedly only able to obtain one which had to come from hours
4  away in Sacramento. These critical care delays were agonizing for the family members who
5  recognized that these delays were causing severe harm to Shawn and that as a result he might not
6  survive. The present family members all have claims for NIED ( negligent infliction of emotional
7  distress ).

8      9.   UCSF had been called repeatedly by KAISER to obtain permission for immediate
9  transport to UCSF but UCSF delayed for hours responding. This was not only negligent and
10 reckless but also violates the federal law EMTALA statute.

**IDENTIFICATION OF PARTIES**

**A.   Plaintiffs.**

10.  PATRICIA LOUCKS, 499 Ronsheimer Road, Penngrove, CA 94941.

11.  DONNA BARRY, 1539 Mark West Springs Road, Santa Rosa, CA 95403.

12.  LUKE BARRY, 1539 Mark West Springs Road, Santa Rosa, CA 95403.

13.  CHRISTINA KEENEY-FOSTER, 18170 Fishhook Court, Hidden Valley, CA 95467.

14.  ERIC FOSTER, 18170 Fishhook Court, Hidden Valley, CA 95467.

15.  PETE FIGONE, 382 Bloomfield Road, Sebastopol, CA 95472.

16.  DAWN LOUCKS, 6586 Primavera Lane, El Dorado Hills, CA 95762.

17.  ASHLEY LOUCKS, 4336 Grafton Circle, Mather, CA   95655.

18.  TONY MARKS, 1602 Flanagan Way, Petaluma, CA 94954.

19.  NENA MEOLA-MARKS, 1602 Flanagan Way, Petaluma, CA 94954.

**B.   Defendants.**

20.  KAISER FOUNDATION HOSPITALS, One Kaiser Plaza, Oakland, CA 94612.

21.  KAISER FOUNDATION HEALTH PLAN, INC., One Kaiser Plaza, Oakland, CA 94612.

1   22.    THE PERMANENTE MEDICAL GROUP, INC., 1950 Franklin Street, 20th

2   Floor, Oakland, CA 94612.

3   23.    AMERICAN MEDICAL RESPONSE (AMR), 6200 S. Syracuse Way, #200,

4   Greenwood Village, CO 80111.

5   24.    THE REGENTS OF THE UNIVERSITY OF CALIFORNIA (UCSF), 1111

6   Franklin Street, 8th Floor, Oakland, CA 94607.

7   25.    DOES 1-50.

## JURISDICTION AND VENUE

26.    This case belongs in federal court due to the federal question of EMTALA and due to AMERICAN MEDICAL RESPONSE (AMR) being based in Colorado and thus establishing diversity jurisdiction. KAISER and UCSF (THE REGENTS OF THE UNIVERSITY OF CALIFORNIA) are based in California in the Northern District.

## INTRADISTRICT ASSIGNMENT

27.    This lawsuit should be assigned to San Francisco/Oakland Division of this Court because this is the district where the events occurred.

## STATEMENT OF FACTS AND CLAIMS

28.    Shawn Loucks was 51 years old on February 10, 2019. He was healthy and athletic. He had just carried two cases of water upstairs in the Penngrove (Sonoma County) California home where he lived with his wife Patty. He became dizzy and nauseous. He felt like the room was spinning. He stumbled to a nearby couch. His wife Patty called 911. He was taken by ambulance to KAISER Santa Rosa arriving at the emergency room at 2:46 pm. The stroke was not diagnosed until after 10pm. No tPA clot buster was timely administered as it should have been for timely and proper diagnosis and treatment.

29.    Shawn was discharged to home.

30.    Shawn had recently retired from his job working for the City and County of San Francisco, Counselor II (Juvenile Probation Officer).

31.    Shawn's death was totally preventable. KAISER failed to provide standard

medical care. This was part of KAISER's common practice to cut corners and failure to provide reasonable and necessary care. KAISER's business model provides for monthly premium payments and then KAISER is responsible to provide all reasonable and necessary care. Unfortunately this provides a strong financial incentive for KAISER to minimize care and to avoid costly referrals and costly diagnostic testing such costly services as stroke care and neurosurgeons and critical care transport among other things. THE PERMANENTE MEDICAL GROUP which is part of the KAISER enterprise is a for profit business entity. The corporate shareholder doctors, share in the profits remaining after deducting the costs of care from the premiums received.

32. KAISER unreasonably and recklessly and intentionally delayed critical care transport knowing it would likely cause harm to SHAWN LOUCKS and this was part of their pattern and practice of placing their interests in profits ahead of patient safety.

33. The delay caused severe emotional distress to all Plaintiffs who were present and aware of the harm being caused thereby.

34. AMR refused and failed to provide a critical care ambulance after promising to do so and causing severe emotional distress to all Plaintiffs and harm to SHAWN LOUCKS delaying critical diagnosis and life saving treatment.

35. UCSF failed to timely respond to a request for emergency transfer and thereby violated EMTALA.  This caused further harm to SHAWN LOUCKS due to the delay in surgical treatment.  It also caused severe NIED to all Plaintiffs.

**DEMAND FOR RELIEF**

Wherefore, Plaintiffs pray for relief as follows:

1. For damages, economic and non-economic, to each of Plaintiff according to proof;

2. For enhanced remedies pursuant to California State Welfare & Institutions Code §15657  including attorney fees;

3. For exemplary/punitive damages including but not limited to as provided for by

1  California Civil Code §3294 based on Welfare & Institutions Code §15600, et seq. and
2  EMTALA;
3       4.      For EMTALA related remedies including, but not limited to, attorney fees and
4  costs and compensation to Plaintiffs; and
5       5.      Prejudgement interest in the amount of 10% per year or at the maximum level
6  recoverable by law.
7  DATED:  February 18, 2020              LAW OFFICES OF DOUGLAS C. FLADSETH

/s/
_____
DOUGLAS C. FLADSETH
Attorney for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial in this action.

Dated: February 18, 2020              LAW OFFICES OF DOUGLAS C. FLADSETH

/s/
_____
DOUGLAS C. FLADSETH
Attorney for Plaintiffs