UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA LOUCKS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KAISER FOUNDATION HOSPITALS, et al., <br><br> Defendants. | Case No. 20-cv-01216-EMC <br><br> **ORDER GRANTING DEFENDANT AMR'S MOTION TO DISMISS, DENYING AS MOOT AMR'S MOTION FOR A MORE DEFINITE STATEMENT, AND GRANTING AMR'S MOTION TO STRIKE** <br><br> Docket No. 35 |

## I.  INTRODUCTION

This case arises out of the circumstances surrounding the death of Shawn Loucks ("Mr. Loucks"), who died at a UCSF hospital on February 23, 2019, after also receiving medical care at Kaiser Santa Rosa on February 10 and 20, 2019.  Plaintiffs are Patricia Loucks, Donna Barry, Luke Barry, Christina Keeney-Foster, Eric Foster, Peter Figone, Dawn Loucks, Ashley Loucks, Tony Marks, and Nena Meola-Marks (collectively "Plaintiffs").  The Complaint itself does not identify the relationship of these parties to the deceased (although it appears that at least some of the Plaintiffs are Mr. Loucks's family members).  Defendants are Kaiser Foundation Hospitals, Kaiser Foundation Health Plan, Inc, The Permanente Medical Group, Inc. (together "Kaiser"), American Medical Response ("AMR"), and the Regents of the University of California ("the Regents" or "the UC Regents") (collectively "Defendants").  Plaintiffs assert claims for medical malpractice, dependent adult abuse, negligent infliction of emotional distress ("NIED"),

intentional misconduct,[1] violations of the Emergency Medical Treatment and Labor Act ("EMTALA"), and wrongful death. *See* Docket No. 1 ("Compl.") ¶ 1.

AMR moves to dismiss for failure to state a claim, for a more definite statement, and to strike certain portions of the Complaint. *See* Docket No. 35 ("AMR Mot."). For the reasons discussed below and as stated at the hearing, the Court **GRANTS** AMR's Motion to Dismiss and dismisses the Complaint in its entirety (as to AMR). Plaintiffs' NIED claim is dismissed with leave to amend. Plaintiffs' IIED, dependent adult abuse, and EMTALA claims are dismissed with prejudice. The Court **DENIES** AMR's Motion for a More Definite Statement as moot, and **GRANTS** AMR's Motion to Strike.

## II.     BACKGROUND

### A.     Factual Background

The parties and Court are familiar with the factual background of this case as detailed in this Court's prior order dismissing Plaintiffs' claims against defendant UC Regents and granting defendant Kaiser's Motion to Compel Arbitration. *See* Docket No. 45. As is relevant to this motion, Plaintiffs allege that "KAISER documents that they had consulted with ambulance provider defendant AMERICAN MEDICAL RESPONSE (AMR) who had promised to send their critical care ambulance but nonetheless and without telling anyone simply determined not to do so and refused to do so." Compl. ¶ 8. "AMR negligently and recklessly and intentionally refused to send the critical care ambulance as promised." *Id.* This caused Kaiser personnel to "frantically search for an alternative critical care ambulance." *Id.* Ultimately, the only critical care ambulance that was located "had to come from hours away in Sacramento." *Id.* Plaintiffs allege that "[t]hese critical care delays were agonizing for the family members [who were present] who recognized that these delays were causing severe harm" to Mr. Loucks; these delays furnish the basis for the Plaintiffs' negligent infliction of emotional distress claims. *Id.*

---

[1] Plaintiffs, in their Opposition, specified that their claim for intentional misconduct was actually an intentional infliction of emotional distress ("IIED") claim. *See* Docket No. 46 ("Pls. Opp'n") at 6.

1  B.     Procedural Background

2       Plaintiffs filed their Complaint in federal court on February 19, 2020.  *See* Docket No. 1.
3  On April 21, 2020, the Regents filed a Motion to Dismiss (pursuant to both Rule 12(b)(2) and
4  Rule 12(b)(6)) and for a More Definite Statement, as well as a Motion to Strike.  *See* Docket No.
5  14.  On May 11, 2020, Kaiser filed a Motion to Compel Arbitration and Stay the Case and In the
6  Alternative to Dismiss.  *See* Docket No. 29.  On June 25, 2020, this Court found that the Regents
7  were an instrumentality of the state and thus were immune from suit in federal court under the
8  Eleventh Amendment.  *See* Docket No. 45.  Additionally, this Court found that Plaintiffs were
9  bound by the arbitration agreement between Mr. Loucks and Kaiser.  *See id.*  Accordingly, this
10 Court granted UC Regents' Motion to Dismiss for Lack of Personal Jurisdiction and Kaiser's
11 Motion to Compel Arbitration and Stay the Case.  *See id.*

12      On May 22, 2020, American Medical Response filed a Motion to Dismiss (pursuant to
13 12(b)(6)), for a More Definite Statement, and to Strike.  *See* AMR Mot. at 2.  AMR seeks to
14 dismiss Plaintiffs' claims for NIED, IIED, dependent adult abuse, and EMTALA.  *See id.*  In
15 addition, AMR asks this Court to strike Plaintiffs' punitive damages claim from their Complaint.
16 *See id.*  This Court heard AMR's motion on July 23, 2020.

### III.     DISCUSSION

A.     Subject Matter Jurisdiction

19      The Court has a sua sponte obligation to ensure that it has subject matter jurisdiction over a
20 case.  *See, e.g.*, *Maniar v. Federal Deposit Ins. Corp.*, 979 F.2d 782, 784–85 (9th Cir. 1992)
21 (noting that a district court has power to remand a case sua sponte when it lacks subject matter
22 jurisdiction); *Corporate Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1296
23 (11th Cir. 2009) (stating that "[a] district court may remand a case sua sponte for lack of subject
24 matter jurisdiction at any time").

25      Plaintiffs' Complaint states: "This case belongs in federal court due to the federal question
26 of EMTALA and due to [AMR] being based in Colorado and thus establishing diversity
27 jurisdiction."  Compl. ¶ 26.  Although the federal claim is under EMTALA, AMR does not dispute
28 there is diversity of citizenship, nor does it contest that the amount in controversy exceeds

3

1  $75,000. However, should Plaintiffs file an amended complaint, they must allege the

2  jurisdictional amount. *See* 18 U.S.C. § 1332 ("The district courts shall have original jurisdiction

3  of all civil actions where the matter in controversy exceeds the sum or value of $75,000.").

4  B.     AMR's Motion to Dismiss

5       1.      Legal Standard

6  Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint

7  for failure to state a claim. In ruling on a Rule 12(b)(6) motion, a court takes all allegations of

8  material fact as true and construes them in favor of the plaintiffs to determine whether a plausible

9  legal claim has been stated. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A claim

10  has facial plausibility if the plaintiff pleads "factual content that allows the court to draw the

11  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

12  556 U.S. 662, 678 (2009). The Ninth Circuit has outlined a two-step process for evaluating

13  pleadings against this standard: "First, to be entitled to the presumption of truth, allegations in a

14  complaint or counterclaim may not simply recite the elements of a cause of action, but must

15  contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

16  party to defend itself effectively. Second, the factual allegations that are taken as true must

17  plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to

18  be subjected to the expense of discovery and continued litigation." *Levitt v. Yelp! Inc.*, 765 F.3d

19  1123, 1135 (9th Cir. 2014) (citations omitted).

20      2.      Analysis

21  AMR moves to dismiss Plaintiffs' claims for NIED, IIED, dependent adult abuse, and

22  EMTALA pursuant to FRCP 12(b)(6). *See* AMR Mot. at 2; Docket No. 47 at 6 ("AMR Reply").

23          a.      Negligent Infliction of Emotional Distress

24  Before turning to Plaintiffs' NIED claim, it is necessary to note that Plaintiffs have not

25  adequately alleged an underlying negligence claim against AMR for Mr. Loucks's death.

26  Critically, Plaintiffs' NIED claim must be predicated on an underlying negligence claim against

27  AMR for Mr. Loucks's death in order for Plaintiffs to recover for emotional distress. *See Thing v.*

28  *La Chusa*, 48 Cal. 3d 644, 667–68 (1989) ("[A] plaintiff may recover damages for emotional

distress caused by observing the *negligently* inflicted injury of a third person.") (emphasis added). Put differently, Plaintiffs cannot recover for the emotional distress AMR allegedly caused Plaintiffs if AMR's conduct was not negligent. *See id.* The complaint lacks specific factual allegations identifying an underlying negligent act and other elements such as duty, proximate cause, etc.

Even if Plaintiffs had adequately plead an underlying negligence claim against AMR, they have not stated a NIED claim. In California, NIED claims are analyzed under "two 'theories' of recovery: the 'bystander' theory and the 'direct victim theory.'" *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1071 (1992). "The distinction between the 'bystander' and 'direct victim' [theories] is found in the source of the duty owed by the defendant to the plaintiff." *Id.* at 1072. Plaintiffs assert a bystander theory here. "The 'bystander' cases . . . address 'the question of duty in circumstances in which a plaintiff seeks to recover damages as percipient witness to the injury of another.'" *Id.* at 1072 (citations omitted). The class of persons able to recover for witnessing the injury of another was defined by the California Supreme Court in *Thing*. *See* 48 Cal. 3d at 667–68. There, the court held:

> [A] plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress - a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.

*Id.* at 667. Thus, Plaintiffs can recover for emotional distress damages only if they meet *Thing*'s three-factor test. *See id.*

i.   First *Thing* Factor

The *Thing* court further defined what "closely related to the injury victim" meant by stating, "[i]n most cases no justification exists for permitting recovery for NIED by persons who are only *distantly related* to the injury victim." *Id.* at 688 n.10 (emphasis added). The court explained that "[a]bsent exceptional circumstances, recovery should be limited to relatives residing in the same household, or parents, siblings, children, and grandparents of the victim." *Id.*

5

Here, Plaintiffs, in their Complaint, do not detail how they are related to Mr. Loucks. *See* Compl. ¶¶ 10–19. However, in their Opposition, Plaintiffs state that Patricia "Patty" Loucks is Mr. Loucks's wife; Ashley Loucks is Mr. Loucks's daughter; Dawn Loucks is Mr. Loucks's mother; Luke Barry is Mr. Loucks's brother-in-law; Donna "Dawn" Barry is Mr. Loucks's sister-in-law; Christina Keeney-Foster is Mr. Loucks's niece-in-law; Eric Foster is Mr. Loucks's nephew-in-law; Nena Marks is Mr. Loucks's sister-in-law; and Tony Marks is Mr. Loucks's brother-in-law.[2] *See* Pls. Opp'n at 4–5. Thus, Patricia, Ashley, and Dawn Loucks may satisfy the first *Thing* factor because they assertedly are Mr. Loucks's wife, daughter, and mother, respectively. *See Thing*, 48 Cal. 3d at 688 n.10; Pls. Opp'n at 4–5. However, Plaintiffs still must amend their Complaint to allege specifically the familial relationships they asserted in their Opposition . *See* Compl. ¶¶ 10–19; Pls. Opp'n at 4–5. The other named Plaintiffs are distant relatives and can recover only if they resided in the same household as Mr. Loucks or can show "exceptional circumstances." *See Thing*, 48 Cal. 3d at 688 n.10.

Plaintiffs argue that even though Luke and Donna "Dawn" Barry; Christina Keeney-Foster and Eric Foster; and Nena and Tony Marks are distant relatives, exceptional circumstances exist that permit recovery. *See* Pls. Opp'n at 5. Plaintiffs state that "[b]eing present for and aware of your family member's final moments involving the worst possible intentional and reckless neglect is more than an exceptional circumstance for a close relative." *Id*. Here, Plaintiffs misconstrue the meaning of an "exceptional circumstance" under California caselaw. In *Moon v. Guardian Postacute Services*, *Inc.*, a California appellate court held that courts are "ill equipped to assess emotional attachments" and thus pleading a strong relationship and/or showing an emotional bond between two parties, "does not satisfy the exceptional circumstances requirement." 95 Cal. App. 4th 1005, 1012 (2002). Rather, the court stated that exceptional circumstances would "have to be grounded on issues of public policy." *Id.* The court offered an example of an exceptional circumstance, stating, "if denying the claim would relieve the defendant from facing any liability

---

[2] Peter Figone is not listed, and his claims are **DISMISSED** from the case because Plaintiffs admit that he cannot recover for NIED because he is not a relative of Mr. Loucks. *See* Pls. Opp'n at 5. He does not assert and/or cannot recover under any of the other claims.

6

for an NIED claim because there is no close living relative who can make such a claim, the court should consider the exceptional circumstances exception." *Id.*

Here, Plaintiffs have pointed to no such public policy issue. *See* Pls. Opp'n at 5. Unlike the hypothetical contemplated in *Moon*, Plaintiffs Patricia, Ashley, and Dawn Loucks may recover under NIED (assuming they meet the remaining *Thing* factors). *See Thing*, 48 Cal. 3d at 688 n.10; Pls. Opp'n at 4–5. Plaintiffs incorrectly argue that exceptional circumstances exist due to the particular type of harm Plaintiffs witnessed. *See* Pls. Opp'n at 5. Although the harm Plaintiffs plead would likely be a traumatic experience for any relative to witness, as explained in *Moon* and *Thing*, California caselaw does not support their argument: courts are "ill equipped" to judge the emotional attachments between distant relatives and the victim, and courts "must draw arbitrary lines." *Moon*, 95 Cal. App. 4th at 1013; *Thing*, 48 Cal. 3d at 667. Thus, the NIED claims of all named Plaintiffs besides Patricia (wife), Ashley (daughter), and Dawn Loucks (mother) are dismissed with prejudice. *See Moon*, 95 Cal. App. 4th at 1013.

### ii. Second *Thing* Factor

The second *Thing* factor requires Plaintiffs to be "present at the scene of the injury-producing event at the time it occurs and . . . aware that it is causing injury to the victim." *Thing*, 48 Cal. 3d at 667. A plaintiff must "experience a *contemporaneous sensory awareness* of the causal connection between the negligent conduct and the resulting injury."[3] *Golstein v. Superior Court*, 223 Cal. App. 3d 1415, 1437 (1990) (emphasis added). "A plaintiff may recover based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative." *Bird*, 28 Cal. 4th at 916. "When there is observation of the defendant's conduct and the [victim's] injury *and contemporaneous awareness the defendant's conduct or lack thereof is causing harm* to the [victim], recovery is permitted." *Bird*, 28 Cal. 4th

---

[3] In its Motion to Dismiss and at oral argument, AMR stated that Plaintiffs must have been aware that AMR's conduct was negligent. *See* AMR Mot. at 18. This is not the law. *See Bird v. Saenz*, 28 Cal. 4th 910, 920–21 (2002). In *Bird*, The California Supreme Court stated: "[A] plaintiff need not contemporaneously understand the defendant's conduct as *negligent*, as opposed to *harmful*." *Id.* at 920 (emphases in original). The *Bird* court further noted that rather than require a plaintiff to be aware of negligence (a legal conclusion), a plaintiff "must be contemporaneously aware of the connection between the injury-producing event and the victim's injuries." *See id.* at 920–21. The plaintiff must be aware that the event was harmful.

7

at 910 (emphases in original) (citing *Ochoa v. Superior Court*, 39 Cal. 3d 159, 170 (1985)). "In the case of an event which cannot be perceived, distress recovery is not allowed." *Golstein*, 223 Cal. App. 4th at 1427.

Here, Plaintiffs assert that AMR's negligent conduct or injury-producing event was its failure to respond and transport Mr. Loucks. *See* Compl. ¶ 8. Plaintiffs assert that they learned of AMR's injury-producing conduct from Kaiser personnel and not from AMR. *See id.*; Pls. Opp'n at 3. This poses a problem for Plaintiffs' claim because they could not have had a "contemporaneous sensory awareness" of AMR's injury-producing conduct; they learned of the allegedly harmful act and resulting injury through an intermediary – Kaiser. *See Golstein*, 223 Cal. App. 3d at 1427 ("In the case of an event which cannot be perceived, distress recovery is not allowed."). Plaintiffs were aware of the injurious consequences of AMR's decision but not contemporaneously of AMR's decision itself. *See Bird*, 28 Cal. 4th at 921 ("One takes a giant leap . . . by imposing liability for NIED based on nothing more than a bystander's 'observation of the *results* of the defendant's infliction of harm,' however 'direct and contemporaneous.'"). Plaintiffs' reliance on *Keys v. Alta Bates Summit Medical Center*, 235 Cal. App. 4th 484, 485 (2015) is inapposite. *Keys* is distinguishable because the plaintiffs therein witnessed the injury-producing event themselves. *See* 235 Cal. App. 4th at 490 (defining the "injury-producing event" as the "defendant's lack of acuity and response to [decedent's] inability to breathe, a condition plaintiffs observed and were aware was causing her injury"). There was "contemporaneous sensory awareness." *Golstein*, 223 Cal. App. 3d at 1437.

Thus, Plaintiffs have not met the requirements of the second *Thing* factor.

                iii.    Third *Thing* Factor

The Court further notes that as to the third *Thing* factor, which requires Plaintiffs to allege they suffered "serious emotional distress," Plaintiffs merely allege in conclusory terms they suffered "extreme" and "severe" emotional distress. *Thing*, 48 Cal. 3d at 667; Compl. ¶¶ 8, 34. Thus, Plaintiffs' allegations fall short of required pleading standards. *See Levitt*, 765 F.3d at 1135 ("[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of

1  underlying facts to give fair notice and to enable the opposing party to defend itself effectively.");

2  *see also Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 989 n.12 (1993) ("Serious

3  emotional distress is such that 'a reasonable [person], normally constituted, would be unable to

4  adequately cope with the mental stress engendered by the circumstances of the case.'") (citations

5  omitted).

6        Accordingly, Plaintiffs' NIED claim is dismissed with leave to amend.

7        b.      <u>Intentional Infliction of Emotional Distress</u>

8        In their Complaint, Plaintiffs alleged "intentional misconduct" and that AMR

9  "intentionally refused to send the critical care ambulance as promised." Compl. ¶¶ 1, 8.

10  Subsequently, in their Opposition brief, Plaintiffs argued that their "intentional misconduct" claim

11  was actually a claim for intentional infliction of emotional distress. Pls. Opp'n at 6.

12        The elements of IIED are as follows: (1) extreme and outrageous conduct by the defendant

13  with the intention of causing, or reckless disregard of the probability of causing, emotional

14  distress; (2) the plaintiff suffering severe or extreme emotional distress; and (3) actual and

15  proximate causation of the emotional distress by the defendant's outrageous conduct. *See Hughes*

16  *v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations omitted). "A defendant's conduct is 'outrageous'

17  when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"

18  *Id.* (citations omitted). In addition, "[the defendant's] conduct [must be] *directed at the plaintiff*,

19  or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior*

20  *Court*, 54 Cal. 3d 868, 903 (1991) (emphasis added).

21        Because Plaintiffs did not plead an IIED claim in their Complaint (and instead only

22  asserted, without clarification, "intentional misconduct"), any IIED claim they purport to assert is

23  dismissed. *See Ashcroft*, 556 U.S. at 678. Had Plaintiffs identified their "intentional misconduct"

24  claim as an IIED claim in their Complaint, the claim would still fail because Plaintiffs have not

25  shown that AMR intentionally directed their conduct at Plaintiffs or were aware of Plaintiffs'

26  presence in the emergency room. *See Christensen*, 54 Cal. 3d at 903. Instead, based on Plaintiffs'

27  allegations, AMR was aware of Mr. Loucks, only, because he is the individual it had allegedly

28  promised to transport. *See* Compl. ¶ 8. Furthermore, Plaintiffs are barred, under California law,

from recovering on behalf of Mr. Loucks for any emotional distress he may have suffered prior to his death. *See* Cal. Civ. Proc. Code § 377.34 ("In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death . . . *and do not include damages for pain, suffering, or disfigurement*.") (emphasis added); *Cty. of Los Angeles v. Superior Court*, 21 Cal. 4th 292, 305 (1999) (explaining that § 377.34 allows the estate of the decedent to recover for pecuniary losses such as lost or reduced wages or medical care expenses, but not for emotional distress because "when the plaintiff experiences emotional distress, the loss is nonpecuniary"); *Li Ching Chu v. Naik*, No. A142837, 2015 WL 3380969, at *3 (Cal. Ct. App. May 26, 2015) (unpublished) ("The survival claims for intentional and negligent infliction of emotional distress are by definition barred by section 377.34 because the damages for such torts consist of emotional suffering.").

Because Plaintiffs have not given the Court any reason to believe that AMR was aware or could have been aware of Plaintiffs' presence at the time AMR allegedly caused Plaintiffs' extreme emotional distress, Plaintiffs' IIED claim is dismissed with prejudice.

   c. <u>Dependent Adult Abuse</u>

The Elder Abuse and Dependent Adult Civil Protection Act ("Dependent Adult Act" or "Act") was enacted to provide heightened remedies for "acts of egregious abuse" against elders or dependent adults. *See Delaney v. Baker*, 20 Cal. 4th 23, 35 (1999). A dependent adult is "any person between the ages of 18 and 64 years who is admitted to a 24-hour health facility." Cal. Welf. & Inst. Code § 15610.23. Heightened remedies are available "where it is proven by clear and convincing evidence" that a defendant is liable for physical abuse, neglect, or abandonment, and that the defendant "has been guilty of recklessness, oppression, fraud or malice" in the commission of the abuse. Cal. Welf. & Inst. Code § 15657. Acts of simple or professional negligence are not subject to liability under the Act. *See Baker*, 20 Cal. 4th at 32.

Plaintiffs allege that AMR "negligently and recklessly and intentionally refused to send their critical care ambulance," which caused "severe harm" to Mr. Loucks. Compl. ¶ 8. Based on the language used in their Opposition, Plaintiffs purport to allege abuse via neglect or

abandonment. *See* Pls. Opp'n at 3 ("When [AMR] failed and refused to do so it was reckless neglect and abandonment at a minimum.").

Under the Dependent Adult Act, abandonment and neglect require the defendant to have had "care or custody" of the dependent adult. *See* Cal. Welf. & Inst. Code §§ 15610.05, 15610.57. To have "care or custody" of the dependent adult, the defendant and dependent adult must have had a custodial relationship as described by the California Supreme Court in *Winn v. Pioneer Medical Group, Inc.*, 63 Cal. 4th 148, 158 (2016). The *Winn* court stated:

> [A custodial relationship] is a relationship where a certain party has assumed a significant measure of responsibility for attending to one or more of an elder [or dependent adult's] basic needs that an able-bodied and fully competent adult would ordinarily be capable of managing without assistance. [The relationship] entails more than casual or limited interactions. It is the defendant's relationship with an elder or a dependent adult–not the defendant's professional standing or expertise–that makes the defendant potentially liable for neglect.

*Id.* at 158.

Here, Plaintiffs fail to allege (nor does their Opposition reasonably assert) a relationship akin to the type of relationship described in *Winn*. *Compare id.*; *with* Pls. Opp'n at 2. Indeed, based on Plaintiffs' allegations, AMR never even met Mr. Loucks, let alone took "care and custody of him." *See* Compl. ¶¶ 8, 34.

The persons the Dependent Adult Act was designed to protect are those that are dependent upon a healthcare provider or caretaker for their basic needs. *See Delaney*, 20 Cal. 4th at 33. In this case, Mr. Loucks may have been dependent on AMR prospectively for transport, but that is not the type of relationship the Act was designed to regulate; there was no existing relationship at the time AMR acted (or did not act). Because Plaintiffs have not alleged facts that would bring them within the realm of the Dependent Adult Act and cannot do so, Plaintiffs' dependent adult abuse claim is dismissed with prejudice. *See Winn*, 63 Cal. 4th at 165 ("Plaintiffs cannot bring a claim of neglect under the [Elder Abuse and Dependent Adult Civil Protection Act] unless the defendant health care provider has a caretaking or custodial relationship with the elder or dependent adult.").

11

d.    EMTALA

Lastly, Plaintiffs allege that AMR has violated EMTALA. *See* Compl. ¶ 1; Pls. Opp'n at 6. Under EMTALA, if a hospital fails to screen an individual seeking care or fails to provide further medical care or transfer in order to stabilize the individual, the individual has a private right of action against the hospital. *See* 42 U.S.C. § 1395dd. An individual's private right of action to sue is limited to hospitals only. *See id.* ("Any individual who suffers personal harm as a direct result of a *participating hospital's* violation of a requirement of this section may, in a civil action *against the participating hospital*, obtain those damages available for personal injury . . . and such equitable relief as is appropriate.") (emphasis added); *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1256 (9th Cir. 1995) ("The plain text of the EMTALA explicitly limits a private right of action to the participating hospital.").

Plaintiffs admit that "EMTALA [liability] is generally limited to hospitals." Pls. Opp'n at 6. Nonetheless, Plaintiffs argue AMR may be an agent of Kaiser, and that "it is now particularly important to determine the extent that AMR might be part of the present EMTALA violations." *Id.* Plaintiffs provide no relevant support for their argument that AMR, a private ambulance company, would be subject to EMTALA liability or how AMR (assuming they were subject to liability) violated EMTALA's screening and stabilization requirements. *See Trahan v. Clayton Dublier & Rice*, 741 Fed. App'x 397, 399 (9th Cir. 2018) (unpublished). Plaintiffs cite *Arrington v. Wong*, 237 F.3d 1066, 1068 (9th Cir. 2001), and argue that "assuming responsibility for a patient and then abandoning and refusing to follow through on that commitment is a similar if not worse violation of the intention and purpose of [EMTALA]." Pls. Opp'n at 7. However, *Arrington* is not analogous to Plaintiffs' case because the subject of the EMTALA violation in *Arrington* was the defendant hospital, not the ambulance company. *See* 237 F.3d at 1069. In *Arrington*, the plaintiff, Mr. Arrington, suffered a heart attack and was transported by an ambulance to the nearest hospital, which was defendant's hospital. *Id.* at 1069. While on the way to the defendant hospital, ambulance personnel contacted the defendant hospital to inform them of Mr. Arrington's condition. *Id.* The hospital responded by redirecting the ambulance to a different hospital that was farther away. *Id.* Mr. Arrington's condition then deteriorated, and he died

12

1  shortly thereafter. *Id.* The court determined that the defendant *hospital* had violated EMTALA
2  because the *hospital* had failed to screen Mr. Arrington (who sought the hospital's care) and
3  instead *made the decision* to redirect the ambulance to a different hospital. *Id.* at 1070, 1074.
4  Here, the hospital – Kaiser – sought to transfer Mr. Loucks; it was *AMR* – not a hospital – that
5  allegedly made the decision not to respond. Whether AMR had a contract with Kaiser to transport
6  patients like Mr. Loucks is immaterial. The question under EMTALA is whether a hospital made
7  the injurious decision. *See Eberhardt*, 62 F.3d at 1256.

       Accordingly, the Court dismisses Plaintiffs' EMTALA claim against AMR with prejudice because EMTALA does not apply to AMR in this context. *See* 42 U.S.C. § 1395x(e).

C.    AMR's Motion for a More Definite Statement

       Because the Court has dismissed all claims against AMR, AMR's Motion for a More Definite Statement is denied as moot. Nonetheless, the Court cautions Plaintiffs that any amended complaint may not lump causes of action into a single paragraph. *See* Compl. ¶ 1. Instead, Plaintiffs should adhere to Federal Rule of Civil Procedure 10(b) by clearly delineating each claim.

D.    AMR's Motion to Strike

       Because the Court has dismissed with prejudice all claims for which Plaintiffs could seek punitive damages, the Court grants AMR's Motion to Strike from the Complaint Plaintiffs' prayer for punitive damages.

///
///
///
///
///
///
///
///
///

## IV. CONCLUSION

For the forgoing reasons, the Court **GRANTS** AMR's Motion to Dismiss and dismisses the Complaint in its entirety (as to AMR). Plaintiffs' NIED claim against AMR is dismissed with leave to amend. Plaintiffs' IIED, dependent adult abuse, and EMTALA claims against AMR are dismissed with prejudice. The Court **DENIES** AMR's Motion for a More Definite Statement as moot, and **GRANTS** AMR's Motion to Strike.

Should Plaintiffs seek to file an amended complaint, they must do so within thirty (30) days.

This order disposes of Docket No. 35.

**IT IS SO ORDERED**.

Dated: July 31, 2020

_____
EDWARD M. CHEN
United States District Judge